United States District Court
Southern District of Texas
**ENTERED**
May 06, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:19-cv-00248

LYSHYRA HARRIS, *PLAINTIFF*,

v.

WAL-MART STORES TEXAS, LLC, AND
OFFICER EDWARD CORONADO, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Before the court are Officer Edward Coronado's motion to dismiss and Wal-Mart Stores Texas, LLC's motion to partially dismiss, both filed under Fed. R. Civ. P. 12(b)(6). Dkts. 23 and 24. Having considered the parties' arguments, the evidence, and the applicable law, and for the reasons discussed below, the court grants Officer Coronado's motion and dismisses Harris' claims against him with prejudice. As for Wal-Mart, the court grants in part and denies in part its motion. Specifically, Wal-Mart's motion is denied as to Harris' state-law claims for theft and conversion. The motion is granted as to all other claims that are addressed in this opinion, and those claims are dismissed with prejudice.

## I.     FACTUAL BACKGROUND

On December 7, 2017, Officer Coronado arrested LyShyra Harris for disorderly conduct at the Wal-Mart on Galveston Island. Dkt. 21 at 4–7.[1] Harris has sued both Officer Coronado, in his individual capacity, and Wal-Mart alleging the two conspired to violate her constitutional rights. Harris also asserts state-law claims against both defendants for assault and battery, as well as three additional state-law claims against Wal-Mart for abuse of process, conversion, and theft under the Texas Theft Liability Act. *See generally id.*

The following factual allegations come from Harris' amended complaint, which the court treats as true for purposes of deciding the pending motions to dismiss. *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (in deciding a Rule 12(b)(6) motion to dismiss, the court "will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.").

On December 7, 2017, Harris purchased $385.62 worth of products from the self-service cashier station at the Galveston Wal-Mart. As Harris was leaving the store, she noticed that she had been overcharged for two pillows. Harris went to the store's customer-service center and spoke to a customer-service representative who confirmed Harris had, indeed, been overcharged. To "make it more convenient to fix the overcharge," Harris re-entered the merchandise area to retrieve a price tag for the pillows. Harris returned with the price tag, as well as

---

[1] Page-number citations to documents that the parties have filed refer to those that the court's electronic-case-filing system automatically assigns.

two larger pillows, which she purchased at the customer-service counter for $29.60. Harris used her debit card for both purchases and has included as exhibits to her amended complaint copies of her receipts, along with an incomplete copy of her December 2017 debit-card statement that contains two charges on December 7 for $385.62 and $29.60, respectively. *See* Dkt. 21–2 at 6–7.

After completing her second purchase, Harris began to exit the store. While she was in the vestibule, a Wal-Mart employee asked to review her receipts. Although Harris' receipts were in her purse, she told the Wal-Mart employee that she could not produce them because she needed both hands to stabilize the items in her overflowing cart. She then continued toward the parking lot.

While unloading her items into her car, Harris was again confronted by the same Wal-Mart employee, who she alleges "ran up to her and snatched her cart . . . away from her." Dkt. 21 at 8. Despite receiving assurances "that he would return [Harris'] property to her [if she] produc[ed] a receipt," Harris did not do so. *Id.* at 9. Instead, "in an effort to stop [the employee] from taking her purchased property," Harris placed her foot behind one of the cart's wheels, at which point the Wal-Mart employee "committed battery and ran over [Harris'] foot with the cart." *Id.* at 8.

While Harris was busy vying for control of the shopping cart, a Wal-Mart "loss[-]prevention specialist" parked behind Harris' car to "prevent[ ] her from leaving" and called the police. *Id.* Before the police could arrive, Harris "decided she no longer wanted the items she had purchased and decided to go back into the

store to get a refund." *Id.* at 10. Although it is not clear how Harris managed to maneuver her vehicle past Wal-Mart's loss-prevention specialist, Harris claims she drove to a parking spot near the store's entrance. She then filled up a second cart with a "majority" of the items she had purchased and loaded into her car and returned to the customer-service center to demand a refund. *See id.* at 10–11.

The store manager, Timothy McNerney, approached Harris at the customer-service counter and told her he "was not going to return her money" and "to take everything that you have stole [sic] and leave." Harris refused and continued to demand a refund. It quickly became clear McNerney would not issue a refund, so Harris used Wal-Mart's landline to call its "complaint department." A store representative took down Harris' contact information and told her that a Wal-Mart corporate representative would call her to discuss the incident "within 48 hours." Harris, however, insisted on resolving the incident "[while] she was still in the store." *Id.* at 12–13.

A little over ten minutes after Harris re-entered the store, Officer Coronado arrived on the scene. Most of the remaining conduct relevant to Harris' claims is captured on Officer Coronado's bodycam footage, which Harris submitted as an exhibit to her amended complaint. *See* Dkt. 19.

After entering the store, Officer Coronado first spoke with McNerney, who told him that Harris had refused to produce her receipt, "cussed at [his employees]," and then bullied her way out" of the store. *See id.* at 2:00–3:58. Nevertheless, McNerney was reluctant to press charges because none of his employees witnessed

Harris steal any merchandise. Instead, McNerney simply asked Officer Coronado to remove Harris from the store. *See id.*

After speaking with McNerney, Officer Coronado approached Harris and asked that she hang up the phone. Harris twice brushed off Officer Coronado's request before he reached across her body to disconnect the call.[2] *Id.* at 4:10–4:22. In doing so, Harris contends that Officer Coronado assaulted her. *See* Dkt. 21 at 15 ("while [Harris] is on the phone and in contact with the phone, [Officer Coronado] hangs up the phone – committing an assault upon the person of [Harris]").

Officer Coronado then asked Harris for her ID,[3] to which she responded: "Did I do something wrong?" After explaining that he was investigating a possible theft, Officer Coronado again asked Harris for her ID. Dkt. 19 at 4:30–4:48. Over the next two minutes, Officer Coronado asked Harris for her ID, name, or date of birth in some form or fashion at least 14 times. *See id.* at 4:56–6:36. Aside from providing her first and last name—but only after multiple requests to do so—Harris evaded Officer Coronado's other questions. Instead, she repeatedly asked whether she did something wrong and insisted that Officer Coronado "let [her] explain" the situation.[4] *See id.*

---

[2] After Officer Coronado's second request, Harris placed the call on speakerphone and set the receiver down. *See* Dkt. 19 at 4:17–4:21.

[3] Harris told Officer Coronado that she had her ID but refused to produce it. *See* Dkt. 19 at 4:44–4:46 ("Of course I have my ID on me.")

[4] Officer Coronado told Harris that she could ask questions once she provided him with her full name and date of birth. Dkt. 19 at 5:32–5:35.

Finally, after consistently having his questions rebuffed, an exasperated Officer Coronado turned toward McNerney and had the following exchange:

**Q:**   Did you guys see her take anything.

**A:**   No, we didn't actually see her do it. [One of the employees] tried to stop her at the door; she wouldn't stop.

**Q:**   Did you -- Did she use any vulgar language at any point?

**A:**   She used vulgar language at me. She used the 'F' word several times.

**Q:**   Were you offended by that vulgar language?

**A:**   I was very offended.

*Id.* at 6:46–6:52. Moments later, Officer Coronado arrested Harris for disorderly conduct. *See id.* at 7:00–7:42.

While being arrested, Harris attempted to retrieve her purse but ultimately relented when Officer Coronado threatened to charge her with resisting arrest. *Id.* at 7:32–7:52. In his probable-cause affidavit, however, Officer Coronado reported that "Harris was arrested and charged with RESIST ARREST SEARCH OR TRANSPORT." Dkt. 21–5 at 6, ¶ 11. Harris fixates on this discrepancy in her complaint. But Harris' own allegations make clear that she was not arrested for or charged with resisting arrest. Dkt. 21 at 51 ("Officer Coronado never arrests [Harris] for 'resisting arrests'. [sic] He several times threatens [sic] to do so, but never did . . ."); *see also* Dkt. 21 at 22 ("the charge changed from disorderly conduct to resisting arrest back to disorderly conduct").

Harris was released from custody the following day and immediately returned to Wal-Mart to get her car and the items she purchased. *See id.* at 20. For some "but not all [of] the items [she] had purchased," McNerney either issued a refund or returned the items. *Id.* at 21–22. Harris then drove to a different Wal-Mart location where she sought and obtain a refund of $292.46. *Id.* at 22. All told, Harris contends Wal-Mart has either refused to issue a refund for or return $122.78 worth of her property. *Id.* at 23.

Harris' charge for disorderly conduct was dismissed two months later. *Id.* at 37 ("[On] February 8, 2018, the Galveston County Prosecutor dismissed the charge, disorderly conduct: obscene language").

## II.   PROCEDURAL HISTORY

Harris' 102-page amended complaint—a sizable portion of which is single-spaced—is a labyrinth of redundancy.[5] Though it is clear Harris' suit primarily concerns alleged violations of her constitutional rights, the complaint itself is a haphazard combination of repetitious factual allegations, scattered arguments, and conclusory statements punctuated with legal buzz words. Moreover, Harris'

---

[5] The Fifth Circuit has expressly held that a district court should generally give a plaintiff at least one chance to amend his or her complaint. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). In September 2019, the court granted Harris leave to cure the very pleading deficiencies Officer Coronado and Wal-Mart now raise in their pending motions to dismiss. *See* Dkt. 10 (Officer Coronado's pre-motion request to discuss the basis for his anticipated Rule 12 motion); Dkt. 14 (Wal-Mart's pre-motion request to discuss the basis for its anticipated Rule 12 motion). And Harris ostensibly addressed these deficiencies, adding 56 pages to her amended complaint. *Compare* Dkt. 1, *with* Dkt. 21.

vague pleadings make it difficult to determine exactly *what* claims she is asserting and against *whom* she asserts each claim—Wal-Mart, Officer Coronado, or both.

Piecing together Harris' factual allegations, the court has surmised that Harris has sued both defendants for violations of her constitutional rights to due process, equal protection, and freedom from false imprisonment, all under 42 U.S.C. § 1983. *See generally id.* Harris also asserts state-law claims against both defendants for assault and battery, as well as three additional state-law claims against Wal-Mart for abuse of process, conversion, and theft under the Texas Theft Liability Act. *See id.* at 8–9, 52–53.

Both defendants have moved to dismiss Harris' claims under Rule 12(b)(6). *See* Dkts. 23 and 24. Officer Coronado asks the court to dismiss all of Harris' claims, arguing she has failed to state a claim upon which relief can be granted. Further, assuming *arguendo* that Harris has successfully pleaded a plausible violation of her constitutional rights, Officer Coronado argues he is entitled to qualified immunity from those claims because "reasonable public officials could differ on the lawfulness of [his] actions." Dkt. 23 at 15–23. As for Harris' state-law claim, Officer Coronado argues he is statutorily immune because it concerns conduct that occurred within the general scope and duties of his employment. *See id.* at 24–27 (citing Tex. Civ. Prac. & Rem. Code § 101.106(f)).

Wal-Mart seeks dismissal of all but one of Harris' claims: assault and battery. *See* Dkt. 24. Wal-Mart's argument for dismissal of Harris' constitutional claims is two-fold: (1) suits under 42 U.S.C. § 1983 cannot be brought against

private entities acting in their private capacity; and (2) Harris has failed to plead facts to support a claim that Wal-Mart conspired with Officer Coronado to violate her constitutional rights. *See id.* at 6–17; *see also Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) ("although § 1983 does not apply directly to non-state or private actors, a party can assert a colorable § 1983 claim if the private actor engaged in "a conspiracy with state actors to violate a person's constitutional rights"). Wal-Mart also argues Harris has failed to state a claim for theft or conversion and urges the court to dismiss Harris' lost-earning-capacity claim because "[she] has alleged no facts whatsoever that would support the existence of such a claim." *Id.* at 19–24.

## III.   LEGAL STANDARD AND APPLICABLE LAW

### A. 12(b)(6) Motion to Dismiss

Dismissal under Rule 12(b)(6) is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *id.* at 556). To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011); *see Ashcroft*, 556 U.S. at 678 ("pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"). Courts are to consider well-pleaded factual allegations of the complaint as true, viewing

them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations and quotations omitted). However, the court is not require to, nor will it, "strain to find inferences favorable to the plaintiff[ ]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

In deciding a motion to dismiss, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). It is well-settled that, at the motion-to-dismiss stage, "a court may consider video evidence attached as an exhibit to the complaint." *Scott v. White*, No. 1:16-CV-1287-RP, 2018 WL 2014093, at *1 (W.D. Tex. Apr. 30, 2018). When doing so, "the court is not required to favor [the] plaintiff's allegations over the video evidence." *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam); *accord Griffin v. City of Sugar Land, Texas*, CV H-18-3121, 2019 WL 175098, at *2 (S.D. Tex. Jan. 11, 2019) (Lake, J.), *aff'd sub nom. Griffin v. City of Sugarland, Texas*, 787 F. App'x 244 (5th Cir. 2019); *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding that the lower court should have viewed facts in light of video evidence rather than the plaintiff's allegations where the video so "utterly discredited" the plaintiff's allegations that "no reasonable jury could have believed him").

**B. Claims Under 42 U.S.C. § 1983**

Section 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the constitution or laws of the United States. 42 U.S.C. § 1983. A complaint under § 1983 must allege that the acts complained of occurred under color of state law and that the complaining parties were deprived of rights guaranteed by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Piotrowski v. City of Hous.*, 51 F.3d 512, 515 (5th Cir. 1995). A complaint under § 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994).

Although § 1983 does not apply directly to non-state or private actors (*e.g.,* Wal-Mart), a party can assert a colorable § 1983 claim if the private actor engaged in "a conspiracy with state actors to violate a person's constitutional rights." *Tebo*, 550 F.3d at 496. "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Anderson v. Law Firm of Shorty, Dooley & Hall*, 393 F. App'x 214, 217 (5th Cir. 2010) (citation omitted).

As for state actors, a claim under § 1983 may be brought against government employees in their individual or official capacities or against a governmental entity. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997)). Personal-

capacity suits seek to impose liability on a government official as an individual, while official-capacity suits generally represent another way of pleading an action against an entity of which the official is an agent. *Id.* (citing *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)).

## C. Qualified Immunity

Qualified immunity shields government officials sued in their individual capacities from liability based on the performance of their discretionary functions. *See Beltran v. City of El Paso*, 367 F.3d 299, 302–03 (5th Cir. 2004). Importantly, qualified immunity is only available to shield government officials from federal claims. *See Kermode v. Univ. of Miss. Med. Ctr.*, No. 3:09-CV-584-DPJ-FKB, 2010 WL 2683095, at *5 (S.D. Miss. July 2, 2010)

Courts apply a two-pronged test to determine whether qualified immunity is a viable defense. First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. *See Beltran*, 367 F.3d at 303. Under the first step, courts consider facts "in the light most favorable to the party asserting the injury." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236—242 (2009). Second, courts must determine whether the official's conduct was objectively reasonable in light of the clearly established legal rules at the time the alleged violation occurred. *See id.*

Once a defendant has asserted qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Cantrell v. City of*

*Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). To meet its burden, a plaintiff must claim the "defendant[ ] committed a constitutional violation under current law" at the time of the alleged violation and that the "defendant['s] actions were objectively unreasonable in light of the law that was clearly established." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). In determining whether a complaint survives the motion-to-dismiss phase, this means that "[t]he complaint must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'" *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (citation omitted).

Under this two-pronged test, even if the court finds the defendant committed a constitutional violation, the court may still find a defendant is shielded from liability because the violation was "objectively reasonable in light of the legal rules that were clearly established at the time." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002); *see Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001) ("The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.").

## IV.   DISCUSSION

### A. Harris' Claims Against Officer Coronado

Harris has sued Officer Coronado in his individual capacity, which means Officer Coronado is presumed immune from suit as to Harris' federal claims under the doctrine of qualified immunity. *See Kermode*, 2010 WL 2683095, at *5. To determine whether Harris has pleaded facts to overcome this presumption, the court first considers whether Harris has alleged a violation of a clearly established constitutional right. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

If that prong is met, the court must consider whether the defendant's "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 537. "The touchstone of this inquiry is whether a reasonable person would have believed that [the officer's] conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

### 1. Harris Has Not Alleged Facts Which State a Plausible Violation of the Constitution or Laws of the United States

### i. False Arrest[6]

"The right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). The existence of probable cause for an arrest, however, is a bar to a § 1983 claim for unlawful arrest or false imprisonment. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *see Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed every suspect released.").

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). It "requires only a probability or substantial chance of criminal activity, not an actual showing

---

[6] Harris' repeated references to section 14.01 of the Texas Code of Criminal Procedure—which authorizes a Texas peace officer to arrest an offender without a warrant when an offense is committed in his presence—are irrelevant because the lawfulness of Officer Coronado's arrest is controlled by probable cause, not whether his actions comported with a state statutory provision. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1189 (5th Cir. 1991) ("The United States Constitution does not require a warrant for misdemeanors not occurring in the presence of an arresting officer. . . . Accordingly, a federal civil rights action will not lie for a warrantless arrest in violation of state law. Section 1983 is a federally created cause of action to redress civil rights violations. The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right." (internal quotations and citations omitted)).

of such activity," *Illinois v. Gates*, 462 U.S. 213, 232 n.13 (1983), and "exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996), *holding modified by Resendiz v. Miller*, 203 F.3d 902 (5th Cir. 2000).

Harris was arrested without a warrant for disorderly conduct—a misdemeanor under Texas law. *See* Tex. Pen. Code § 42.01(a) and (d). A person commits the offense of disorderly conduct when she intentionally or knowingly uses abusive, indecent, profane, or vulgar language in a public place, and the language by its very utterance tends to incite an immediate breach of the peace. *Id.* § 42.01(a). In order to constitute an offense, the words must amount to "fighting words." *Ross v. State*, 802 S.W.2d 308, 314–15 (Tex. App.—Dallas 1990, no pet.). Whether particular words constitute fighting words is a question of fact. *Coggin v. State*, 123 S.W.3d 82, 90 (Tex. App.—Austin 2003, pet. ref'd).

The court's inquiry is solely focused on whether probable cause existed for Officer Coronado to arrest Harris for disorderly conduct. Information contained in Officer Coronado's probable-cause affidavit or the subsequent dismissal of Harris' charge have no bearing on this analysis. *See Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. Unit B July 1981) ("Once probable cause has been established, the legality of the arrest is not affected by . . . a subsequent dismissal or acquittal of the charges.").

In her amended complaint, Harris expressly pleaded McNerney told Officer Coronado that Harris had used curse words (*i.e.,* the 'F' word), and that he was "very offended" by Harris' vulgar language. *See* Dkt. 21 at 13–16. Officer Coronado's bodycam footage corroborates these allegations:

**Q:** Did you see her take anything?

*** 

**A:** No - -

***

**A:** They asked her for a receipt, she said I don't have to show you a receipt, cussed at them, and then bullied her way out the door.

Dkt. 19 at 2:44–2:53.

**Q:** Did she use any vulgar language at any point?

**A:** She used vulgar language at me. She used the 'F' word several times.

**Q:** Were you offended by that vulgar language?

**A:** I was very offended.

*Id.* at 6:46–6:52.

On balance, the court finds the totality of facts and circumstances establish that probable cause existed for Officer Coronado to arrest Harris for disorderly conduct. *See Wesby*, 138 S. Ct. at 586; *see also Levine*, 80 F.3d at 132 ("Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.").

17

Harris complains McNerney is not a reliable witness and that Officer Coronado should have conducted a more in-depth investigation upon his arrival at the store. *See generally* Dkt. 21. But "the mere fact that there may be some exculpatory evidence does not negate probable cause if the totality of the circumstances support a reasonable conclusion that criminal activity is afoot." *Rakun v. Kendall Cty.*, CIV.A. SA-06-CV-1044, 2007 WL 2815571, at *12 (W.D. Tex. Sept. 24, 2007) (citing *Gordy v. Burns*, 294 F.3d 722, 729 (5th Cir. 2002), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)).

Further, Harris' argument that McNerney lied to Officer Coronado does not undermine Officer Coronado's probable-cause determination. *See Rollerson v. City of Freeport, Tex.*, CIV.A. H-12-1790, 2013 WL 2189892, at *8 (S.D. Tex. May 16, 2013) (Harmon, J.) ("Probable cause exists when the facts within the officer's knowledge *and the facts of which he has reasonably reliable information* would be sufficient to believe that the suspect was committing or had committed an offense." (emphasis added and citations omitted)), *aff'd*, 555 F. App'x 404 (5th Cir. 2014). Here, aside from baselessly claiming that Officer Coronado "conspired" with McNerney to fabricate her arrest, Harris has not alleged any facts to imply that Officer Coronado knew or had reason to assume McNerney was an unreliable witness, much less that his statements were unfounded or insupportable. Finally, while it is worth noting that Harris did not use any language in Officer Coronado's presence that could possibly support a charge of disorderly conduct, *see* Dkt. 19,

18

this too does not undermine Officer Coronado's reliance on McNerney's statements. *See Gates*, 462 U.S. at 232 n.13 ("[Probable cause] requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.").

In sum, Harris' own allegations, which are corroborated by the bodycam footage, establish that probable cause existed for Officer Coronado to arrest Harris for disorderly conduct.

### ii. Alleged False Statements in Officer Coronado's Probable-Cause Affidavit

Harris repeatedly refers to alleged "false statements" either made by Officer Coronado to Officer Ali,[7] who arrived on the scene after Harris was in custody, or contained in Officer Coronado's probable-cause affidavit, which mistakenly states that Harris was arrested for resisting arrest, not disorderly conduct. *See, e.g.,* Dkt. 21 at 17, 51–52, 62–63, 89–90. The court is unable to determine whether Harris intends for these statements to form the basis of an alleged constitutional violation.[8] Even so, out of an abundance of caution, the court has reviewed the allegations and finds them both meritless. *See* Dkt. 21–5 at 6.

---

[7] Harris did not include Officer Ali's first name in her amended complaint.

[8] "A governmental official violates the Fourth Amendment when he [or she] deliberately or recklessly provides false, material information for use in an affidavit in support of a search [or arrest] warrant." *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997). In the context of § 1983 claims asserting Fourth Amendment violations, a governmental official is "liable for swearing to false information in an affidavit in support of [an arrest] warrant, provided that: (1) the affiant knew the information was false or [acted with] reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Importantly, "[t]he arrest may still be constitutionally valid if, when the allegedly false or malicious material in a probable-cause affidavit is excised, sufficient material

First, Harris' soaring protestations about Officer Coronado's offhanded remark to Officer Ali that he "saw the whole thing" are entirely unfounded. Dkt. 21 at 17–18, 51–52, 62–64; *see* Dkt. 19 at 13:48–13:49. A cursory review of the bodycam footage belies any notion that Officer Coronado claimed he personally witnessed any of the conduct described to him by McNerney. *See* Dkt. 19 at 10:36–13:49. This argument warrants no further discussion.

As for Officer Coronado's probable-cause affidavit, while it does state that Harris was arrested for resisting arrest, this is simply an oversight. To begin, one cannot be charged with resisting arrest without a predicate offense for which the defendant resists being arrested in the first place. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995) ("the resisting[-]arrest charge could not have provided probable cause for the arrest *ab initio*"). The predicate offense here was disorderly conduct.

Harris even readily and repeatedly acknowledges that she was arrested for disorderly conduct, not resisting arrest. Dkt. 21 at 51 ("Officer Coronado never arrests [Harris] for 'resisting arrests'. [sic] He several times threatens [sic] to do so, but never did . . ."); *see also* Dkt. 21 at 22 ("the charge changed from disorderly conduct to resisting arrest back to disorderly conduct"). This alone defeats any claim that the inclusion of resisting arrest in Officer Coronado's probable-cause affidavit somehow violates Harris' Fourth Amendment rights.

---

remains in the affidavit to support a finding of probable cause." *Wyatt v. Anderson*, A-13-CA-191-SS, 2014 WL 670855, at *7 (W.D. Tex. Feb. 20, 2014) (citing *Franks*, 438 U.S. at 171–72).

Moreover, the remaining information in the probable-cause affidavit is sufficient to support a finding that probable cause existed for Officer Coronado to arrest Harris for disorderly conduct. *See* Dkt. 21–5 at 6, ¶¶ 1–7; *see also Wyatt*, 2014 WL 670855, at *7 ("The arrest may still be constitutionally valid if, when the allegedly false or malicious material in a probable-cause affidavit is excised, sufficient material remains in the affidavit to support a finding of probable cause." (citing *Franks*, 438 U.S. at 171–72)).

### iii.   Malicious Prosecution

A claim based upon conduct that might constitute malicious prosecution at common law is not cognizable under federal law. *See Deville v. Marcantel*, 567 F.3d 156, 169–70 (5th Cir. 2009) ("plaintiffs' claim under § 1983 for 'malicious prosecution' . . . is not independently cognizable"); *see also Castellano*, 352 F.3d at 953–54 ("The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection . . . [but] they are not claims for malicious prosecution and labeling them as such only invites confusion.").

Regardless, Harris' state-law claim for malicious prosecution is time-barred. Under Texas law, a plaintiff must "bring a suit for malicious prosecution . . . not later than one year after the day that the cause of action accrues." *Fatan v. Tillman*, 4:11-CV-812, 2013 WL 789236, at *3 (E.D. Tex. Jan. 31, 2013) (quoting Tex. Civ. Prac. & Rem. Code § 16.002(a)), *report and recommendation adopted,* 4:11CV812, 2013 WL 789121 (E.D. Tex. Mar. 1, 2013). A malicious-prosecution claim accrues

at the close of the criminal proceedings. *Kastner v. Kroger Co.*, 14-11-00445-CV, 2012 WL 4757920, at *5 (Tex. App.—Houston [14th Dist.] Oct. 4, 2012, no pet.) (citing *Lang v. City of Nacodoches*, 942 S.W.2d 752, 758 (Tex. App.—Tyler 1997, writ denied)).

Harris' charge for disorderly conduct was dismissed on February 8, 2018, Dkt. 21 at 42, but Harris did not file the underlying lawsuit until August 2019. *See* Dkt. 1. Moreover, even if her claim were not time-barred, under Texas law, the existence of probable cause defeats a claim for malicious prosecution. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

### iv.    Equal Protection

To state a claim based on the denial of her equal-protection rights, Harris "must allege and prove that [s]he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). A discriminatory intent "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.*; *see Schultea v. City of Patton Vill.*, CIV.A.H-06-0666, 2006 WL 3063457, at *2 (S.D. Tex. Oct. 27, 2006) (Smith, M.J.) ("Traditionally, to bring an equal protection claim, a section 1983 plaintiff must show that 'a state actor intentionally discriminated against the

plaintiff because of membership in a protected class.'" (quoting *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999)).

Put bluntly, there is no basis to support an equal-protection claim. Harris simply states that she is African American. *See* Dkt. 21 at 46–49. At no point does Harris cite a single instance when her race or national origin was so much as mentioned, much less allege that the defendants' actions were motivated by a discriminatory purpose or had a discriminatory effect. And Harris does not allege that Officer Coronado treated her differently than other similarly situated individuals.

### v. Conspiracy Under 42 U.S.C. § 1985

Aside from one stray reference to 42 U.S.C. § 1985 at the beginning of her amended complaint, *see* Dkt. 21 at 2, Harris' pleadings plainly establish that she asserts her constitutional claims under 42 U.S.C. § 1983. But even if Harris has attempted to plead a § 1985 claim, she has not alleged facts that would allow her to pursue one.

To state a claim under § 1985(3), a plaintiff must allege facts which show: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protections of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994). "In doing so, the plaintiff must show that the conspiracy was motivated by a class-

based animus." *Id.* at 653; *see Griffin v. Breckinridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." (emphasis in original)).

As discussed in the preceding section, *see* Section IV(A)(1)(iv),  *supra*, Harris has failed to allege facts which implicate any deprivation of her equal-protection rights, much less each element necessary to sustain a conspiracy claim under § 1985. *See Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6, 9 (1st Cir. 2003) (noting that to withstand Rule 12(b)(6) motion to dismiss, the plaintiff's complaint "must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."); *accord Dumas v. Wal-Mart Stores E., LP*, CV SA-09-CA-126-FB, 2009 WL 10700071, at *2 (W.D. Tex. Apr. 30, 2009).

## 2. Harris Has Not Alleged Facts Sufficient to Overcome Officer Coronado's Affirmative Defense of Qualified Immunity

Assuming *arguendo* Harris has pleaded a violation of the constitution or laws of the United States, the court's inquiry turns to the second qualified-immunity prong: whether Officer Coronado, when considering all the knowledge available to him at the time of the arrest, could not reasonably have believed there was probable cause that Harris was guilty of disorderly conduct. *See Beltran*, 367 F.3d at 303 (under the second prong of the two-pronged inquiry to determine

whether qualified immunity is applicable, "the court must determine whether the official's conduct was objectively reasonable in light of the clearly established legal rules at the time of the alleged violation." (citation omitted)).

"If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel*, 918 F.2d at 1183; *see Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) ("When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official would have understood that what he is doing violates [the law].'" (emphasis in original) (quoting *Ashcroft*, 563 U.S. 731, 740)). This inquiry "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or factual setting in which it took place." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997).

Simply put, Harris' allegations are not enough to overcome qualified immunity. Indeed, Harris has not alleged any basis for the court to conclude that every objective officer would have been on notice that Officer Coronado's action— *i.e.,* arresting Harris for disorderly conduct based on McNerney's statements that she used vulgar language—was clearly unlawful under the factual circumstances alleged in this case. *See Thompson*, 245 F.3d at 457 ("The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated [the

plaintiff's asserted constitutional or federal statutory right.]"). Accordingly, Officer Coronado is protected from suit and liability for Harris' constitutional claims.

### 3. Officer Coronado is Statutorily Immune from Harris' State-Law Claim

Not to be confused with "official immunity, which is an affirmative defense," section 101.106(f) of the Texas Civil Practices and Remedies Code provides a governmental employee with statutory immunity from suit when he is sued for a state-law tort that "(1) is based on conduct within the general scope of the employee's employment and (2) could have been brought under the [Texas Tort Claims] Act against the governmental unit." *Garza v. Harrison*, 574 S.W.3d 389, 400 (Tex. 2019) (Guzman, J.); Tex. Civ. Prac. & Rem. Code § 101.106(f). If these two prongs are met, "section 101.106(f) compels an election that makes suit against the governmental employer the exclusive remedy for a public employee's conduct within the scope of employment." *Id*. at 399. Any remaining tort claims against the employee in his individual capacity *must be dismissed. See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008) (emphasis added). Section 101.106(f) reflects the Texas legislature's intention to prevent recovery against a governmental employee in his individual capacity for work-related conduct. *See Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 752 (S.D. Tex. 2016) (Harmon, J.) (citing *Franka v. Velasquez*, 332 S.W.3d 367, 375–378 (Tex. 2011)); *see also Garza*, 574 S.W.3d at 393–94 ("By adopting section 101.106(f), the

Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct.").

Here, since both elements of § 101.106(f)'s immunity test are met, statutory immunity applies and the court must dismiss Harris' state-law claim against Officer Coronado.

First, accepting as true the well-pleaded facts in Harris' amended complaint and viewing them in the light most favorable to her, the court finds that Harris' state-law claim against Officer Coronado is based on conduct that was within the general scope of his employment as a licensed police officer. As the Texas Supreme Court recently clarified in *Garza*, whether conduct is within the general scope of an officer's employment is a "narrow and objective inquiry" that turns on a simple question: "was [he] doing the job of a peace officer to stop a crime" when the alleged act occurred? *Garza*, 574 S.W.3d at 404–06. Purposefully "broad[ ]," this test is satisfied where, "viewed objectively, 'a connection [exists] between the employee's job duties and the alleged tortious conduct.'" *Id*. at 400–01 (citation omitted). Importantly, "the [officer's] state of mind, motives, and competency are irrelevant" when determining if this test is met. *Id*. at 401. So too are questions regarding whether the officer "had reasonable suspicion that a crime was occurring." *Id*. at 404. In sum, if an officer "was acting under a valid grant of authority conferred by virtue of his status as a peace officer and activated by [one of his job responsibilities]," he will be deemed to have been acting within the general scope of his employment. *Id*. at 406.

The second condition that Officer Coronado must establish to avail himself of § 101.106(f)'s protection is that the alleged tort "could have been brought under the [Texas Tort Claims] Act against the governmental unit"—in this case, the City of Galveston. *See Mossey v. City of Galveston*, 94 F. Supp. 2d 793, 794 (S.D. Tex. 2000) ("a [Galveston] police officer is employed by the City of Galveston"); *see also* Tex. Civ. Prac. & Rem. Code § 101.001(3) (defining "Governmental unit" for purposes of the Texas Tort Claims Act).

"Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, *all tort theories alleged against a governmental unit [or one of its employees]*, whether [they are] sued alone or together . . . are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106." *Franka*, 332 S.W.3d at 378–379 (emphasis added). According to Texas Supreme Court guidance, this condition for § 101.106(f)'s applicability is virtually always satisfied. *Id.* at 381 ("Properly construed," the 'under the Act' test is "met in almost every [ ] suit against a government employee . . ."). The only exception to this general result is when a suit is brought against a governmental employee under a statute that independently waives immunity, instead of a tort. *See Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659 ("Claims against [a governmental employee] brought pursuant to waivers of sovereign immunity that exist apart from the Tort Claims Act are not brought 'under [the Tort Claims Act].'"). Otherwise, a tort suit is considered to have satisfied the "brought-under-the-Act" test on the date that it is filed, regardless of whether a governmental entity has

waived immunity for that particular cause of action. *See Franka*, 332 S.W.3d at 379–80 ("The rule [is] that a tort suit against the government, as distinct from a statutory claim, is brought 'under' the Act for purposes of section 101.106, even though the Act does not waive immunity."); *see also Wilkerson v. Univ. of N. Tex*., 878 F.3d 147, 161 (5th Cir. 2017) ("All common-law tort theories alleged against a governmental unit [or employee] are assumed to be 'under the Tort Claims Act' for purposes of section 101.106.").

As Harris' state-law claim arises in tort, the court finds the claim could have been "brought under the Act" against the City of Galveston. *See* Tex. Civ. Prac. & Rem. Code § 101.106(f). Accordingly, the court dismisses Harris' state-law claim against Officer Coronado because he is statutorily immune.

### B. Harris' Claims Against Wal-Mart

### 1. § 1983's Applicability to a Private Entity Acting in its Private Capacity

In order to establish a claim under § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants acting under color of state law are "clothed with the authority of state law," *id.* at 49 (citations omitted), and their "deprivation of a federal right [must] be fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

Harris alleges no facts in support of any plausible theory that Wal-Mart acted under color of state law. So no reasonable inference can be drawn to connect Wal-Mart's alleged actions with those of a state actor. *See Woods v. Wal-Mart, Inc.*, 7:18-CV-00005-DC, 2018 WL 8996624, at *3 (W.D. Tex. Aug. 14, 2018) ("Wal-Mart is a private corporation that does not act 'under color of state law.'" (citations omitted)).

### 2. Harris' Pleadings Do Not Support a § 1983 Claim Against Wal-Mart for Conspiracy to Violate Her Constitutional Rights

While § 1983 does not apply directly to non-state or private actors, a party can assert a colorable § 1983 claim if the private actor engaged in "a conspiracy with state actors to violate a person's constitutional rights." *Tebo*, 550 F.3d at 496. The predicate liability for such a claim is an underlying constitutional or federal statutory violation. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Anderson*, 393 F. App'x at 217 (citation omitted).

### i. False Arrest

A plaintiff seeking to "hold a private party liable for a conspiracy with arresting officers to violate a plaintiff's civil rights" must show "'that the arresting officer did not make an independent determination whether there was cause to arrest' because of a 'preconceived plan' between the private party and the arresting officer." *Gonzales v. H.E. Butt Grocery Co.*, 226 F. App'x 342, 345 (5th Cir. 2007)

(citing *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985)).

There is no well-pleaded allegation that Wal-Mart and Officer Coronado had a preconceived plan to arrest Harris or those similarly situated to her. *See Anderson*, 393 F. App'x at 217 ("Bald allegations that a conspiracy existed are insufficient" to support a claim under § 1983) (citation omitted)). Further, although Harris also argues that McNerney "agreed" with Officer Coronado and Officer Ali on various charges for which to arrest Harris—despite Harris having already been arrested by the time Officer Ali arrived at the store—Officer Coronado's bodycam footage dispels any notion that the parties conspired with one another. *See* Dkt. 19 at 14:20–20:16. Moreover, such a claim directly contradicts Harris' allegation that McNerney told Officer Coronado that he did not want to press charges. Dkt. 21 at 14–16; *see Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("Where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (citations omitted)).

Simply put, Harris' conclusory allegations that a plan existed between McNerney and Officer Coronado to unlawfully arrest or detain her fails to state a claim that would entitle her to relief against Wal-Mart based on an alleged conspiracy.

### ii.   Due Process

The entirety of Harris' claim for an alleged violation of her due-process rights based on her race or national origin is contained within two pages of her 102-page amended complaint. *See* Dkt. 21 at 46–47. There is no basis to support this claim. In her pleadings, Harris merely states that she is African American. At no point does Harris allege or cite a single instance when her race or national origin was so much as mentioned, much less allege that the defendants' actions were motivated by her race or national origin.

### iii.   Equal Protection

To state a claim based on the denial of her equal-protection rights, Harris "must allege and prove that [s]he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester*, 354 F.3d at 424). Harris does not allege that she was treated differently than other similarly situated individuals. *See* Dkt. 21 at 46–49. Therefore, she has failed to state a claim for a violation of her equal-protection rights.

### iv.   Malicious Prosecution

Again, malicious prosecution standing alone is no violation of the United States Constitution. *See* Section IV(A)(1)(iii), *supra*. And while "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection[,] . . . [s]uch claims of lost constitutional rights are for violation of rights *locatable in constitutional text*," and should be so

pursued, rather than confusingly labeled as malicious-prosecution claims. *Castellano*, 352 F.3d at 953–54 (emphasis added).

Harris asserts claims against Wal-Mart for violations of her constitutional rights to due process, equal protection, and freedom for false imprisonment. Those claims are addressed above. If there is another specific constitutional violation implied in Harris' claim for malicious prosecution, she has failed to adequately plead as much.

**v.    First Amendment Violation**

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." On page 21 of her amended complaint, Harris alleges, without stating any facts in support, that she has suffered a violation of her "First Amendment Freedom." *See* Dkt. 21 at 31. This does not even come close to clearing Rule 8(a)(2)'s low hurdle. Harris does not allege she was engaging in speech or expressive conduct for which she was punished by the state. *See generally id.* Quite the opposite; Harris claims she was *not* engaging in speech or expressive conduct— *i.e.,* she insists she did *not* use vulgar language. Is she alleging that even if she had used vulgar language, and been arrested for it, that the arrest ran afoul of the First Amendment?

Similarly, Harris' fixation on the allegedly false statements by McNerney, which she claims prompted Officer Coronado to arrest her, cannot support a claim under § 1983. As Wal-Mart points out in its briefing, claims for false statements

made by others concerning Harris would, if anything, "seemingly sound under Texas law for defamation." Dkt. 24 at 10 (footnote omitted). But they do not allege a violation of Harris' First-Amendment rights.

### 3. Wal-Mart Cannot Be Held Vicariously Liable for McNerney's Conduct

Harris' constitutional claims against Wal-Mart fail for an additional reason: "[a] defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious[-]liability basis." *Goodarzi v. Hartzog*, CIV.A. H-12-2870, 2013 WL 3110056, at *17 (S.D. Tex. June 14, 2013) (Harmon, J.) (citing *Monell*, 436 U.S. at 685). Instead, under *Monell*, a defendant who employs an active tortfeasor is liable for that constitutional tort only if the employer instituted some policy or custom that caused the constitutional injury. *Monell*, 436 U.S. at 694–95.[9] Harris does not allege that her injuries are attributable to a Wal-Mart policy or custom. Accordingly, her constitutional claims are dismissible on this additional ground.

### 4. Harris Has Not Alleged Facts That State a Claim Under 42 U.S.C. § 1985

Harris has not alleged facts to show a viable claim under 42 U.S.C. § 1985. As previously discussed, Harris' pleadings do not even *imply* that she was not

---

[9] Although *Monell* involved a municipal corporation, every circuit to consider the issue has extended the holding to private corporations. *See, e.g., St. v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (private detention facility); *Harvey v. Harvey*, 949 F.2d 1127 (11th Cir. 1992) (private mental hospital); *Lux by Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir. 1989) (private mental-health center); *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (department store); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (security guard employer).

treated equally on account of her race or national origin. *See* Section IV(A)(1)(v), *supra*.

## 5. Abuse of Process

Buried among her constitutional claims, Harris includes a claim for "abuse of process." *See* Dkt. 21 at 40–44, 52. The "process" with which Harris takes issue is the "initiat[ion of] a criminal prosecution" for disorderly conduct, which she argues Wal-Mart used "to get [Harris] out of the store and not to [sic] return [Harris'] property or refund [her] money." *See id.* at 41.

There is no federal claim for "abuse of process." *See Barra v. Boudreaux*, 6:18-CV-01162, 2020 WL 1695124, at *4 (W.D. La. Apr. 6, 2020) ("A claim for abuse of process falls under the rubric of 'common[-]law torts which protect the interest in freedom from unjustified litigation,' including 'malicious prosecution' and 'wrongful civil proceedings.' Like malicious prosecution, 'the common[-]law tort of misuse of legal procedure, without more, does not rise to the level of constitutional wrong remedied by Section 1983.'" (citing *Sisk v. Levings*, 868 F.2d 159, 161 (5th Cir. 1989)).

Under Texas law, a claim for abuse of process requires: (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process; (2) an ulterior motive or purpose in exercising such use; and (3) damages as a result of the illegal act. *See Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no. pet.). The term "process" is defined as "[a] summons or writ, esp. to appear or respond in court." *Process*, BLACK'S LAW DICTIONARY (11th

ed. 2019); *see Pisharodi v. Watts Law Firm, L.L.P.*, No. 13-07-665-CV, 2008 Tex. App. LEXIS 6162, at *4 (Tex. App. Aug. 14, 2008).

"The 'critical aspect' of an abuse[-]of[-]process claim is the improper use of process *after it has been issued*." *Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App.—Austin 2008, pet. denied) (emphasis in original) (quoting *Preston Gate*, 248 S.W.3d at 897). "If wrongful intent or malice *caused* the process to be issued initially, the claim is instead one for malicious prosecution." *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston 1994, writ denied) (emphasis added).

Generally, in an abuse-of-process action, the issuance of a legal process is justified, but the process itself is subsequently used for a purpose for which it was not designed. In contrast, an action for malicious prosecution is generally available against one who maliciously caused process to issue without probable or reasonable cause. *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *see Johnson v. Davenport*, 3-98CV2227-R, 2000 WL 341255, at *8 (N.D. Tex. Mar. 31, 2000) ("An abuse[-]of[-]process claim does not turn on whether the arrest warrant is valid but whether the defendant made an improper use of the process."), *aff'd*, 240 F.3d 1073 (5th Cir. 2000).

Harris alleges Wal-Mart, through McNerney, maliciously caused process to issue without probable cause. This, alone, cannot support an abuse-of-process claim. *See Bossin*, 894 S.W.2d at 33 (Tex. App.—Houston 1994, writ denied). And Harris has not identified any instance that Wal-Mart made an illegal, improper, or

perverted use of Harris' charge for disorderly conduct. Accordingly, Harris has failed to state a claim of abuse of process.

### 6. Theft and Conversion

Harris' claims for conversion[10] and theft, under the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code § 134.001, *et seq.*,[11] are based on her allegation that Wal-Mart has refused to return or issue a refund for $122.78 worth of the items that she purchased before her arrest. *See* Dkt. 21 at 75–82. Wal-Mart attempts to rebut this claim by arguing that Harris' damages calculation for the value of the property Wal-Mart allegedly converted—which is based on the price Harris paid for the items—is a "mathematical impossibility." *See* Dkt. 24 at 19–23.

Admittedly, Harris' math does not add up. *See id.* Still, Wal-Mart's argument is more suited for summary judgment. Accepting Harris' well-pleaded factual allegations as true and viewing them in the light most favorable to her, Harris has alleged that Wal-Mart converted *some* of her property. *See* footnotes 10 and 11.

---

[10] Conversion is complete where a person unlawfully and wrongfully exercises dominion and control over the property of another to the exclusion or defiance of the right of possession of the owner or of the person entitled to the possession of property involved. *McVea v. Verkins*, 587 S.W.2d 526, 530 (Tex. Civ. App.—Corpus Christi 1979, no writ) (quoting *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971); *see ITT Commercial Fin. Corp. v. Bank of the W.*, 166 F.3d 295, 305 (5th Cir. 1999) ("Under Texas law, conversion is the wrongful exercise of dominion and control over another's property in violation of the property owner's rights.").

[11] The elements of a cause of action under the Texas Theft Liability Act are: (1) the plaintiff had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property or unlawfully obtained services in violation of certain sections of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft. Tex. Civ. Prac. & Rem. Code §§ 134.002(2), 134.003; Tex. Penal Code § 31.03(a).

The court does not reach Wal-Mart's alternative argument that, even if Harris has pleaded a viable claim for theft or conversion, she has failed to state a claim for exemplary damages related to her claim. *See* Dkt. 24 at 23–24 ("But even if [Harris] had some form of claim for conversion or theft, she has not pleaded facts that would support a claim of exemplary damages related to Wal-Mart not paying her $122.78.").

### 7. Special Damages

Harris contends she suffered "[l]oss of earnings" and "[d]amage to her earning capacity" as a result of the defendants' alleged conduct. Dkt. 21 at 99. Under Texas law, loss of earnings and loss of earning capacity are special damages and must be specifically pleaded. *Weingartens, Inc. v. Price*, 461 S.W.2d 260, 264 (Tex. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.); *accord Sherrod v. Bailey*, 580 S.W.2d 24, 28 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) ("[I]f [a] plaintiff[ ] choose[s] to particularize the injuries arising from harm, *all that they intend to prove must be alleged*." (emphasis added)).

Harris has not alleged any facts that could possibly support a claim for either loss of earnings (*e.g.,* she missed work) or loss of earning capacity (*e.g.,* an ongoing physical injury). In fact, Harris does not even allege she was employed at the time she was arrested. Accordingly, Harris is not entitled to recover damages under either theory of recovery.

### C. Harris' Remaining State-Law Claims

Originally, the court's jurisdiction over this dispute was based on federal-question jurisdiction under 28 U.S.C. § 1331. However, now that the court has dismissed the federal claims upon which jurisdiction was initially based, the court's jurisdiction over the remaining state-law claims is by means of supplemental jurisdiction under 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if" it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Pendent jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Although there are several factors to consider in making the determination, the Supreme Court has instructed that "when the federal claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case *without* prejudice." *Id.* at 350–51 (emphasis added); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)).

Here, even though the lawsuit is still in its early stages, because the applicable statute of limitations would likely bar Harris from refiling her state-law claims in state court, dismissal of those claims would operate as a dismissal *with* prejudice. Accordingly, the court finds it appropriate to exercise its discretion in permitting the case against Wal-Mart to proceed in federal court.

***

For the foregoing reasons, the court grants Officer Coronado's motion to dismiss and dismisses Harris' claims against him with prejudice to refiling. The court also grants in part and denies in part Wal-Mart's motion to partially dismiss. Specifically, Wal-Mart's motion is denied as to Harris' state-law claims for theft and conversion. The motion is granted as to all other claims against Wal-Mart that are addressed in this opinion, and those claims are dismissed with prejudice to refiling.

Signed on Galveston Island on this, the 6th day of May, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

40